**19SL-CC02389**

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| DELORES KIRK, )<br><br>Plaintiff, )<br><br>v. )<br><br>AMERICAN PUB, LLC )<br><br>Serve: )<br>CSC-Lawyers Incorporating Service. Co. )<br>221 Bolivar Street )<br>Jefferson City, MO )<br><br>Defendant. ) | Cause No.<br>Division No.<br><br>**JURY TRIAL DEMANDED** |

<u>**PETITION**</u>

   Plaintiff Delores Kirk ("Kirk"), by and through undersigned counsel and for her Petition

against Defendant American Pub, LLC ("Defendant"), hereby states and alleges the following:

<u>**Jurisdiction and Venue**</u>

   1.   Kirk is, and at all times mentioned herein was, a citizen of the State of Missouri residing

in St. Louis County, Missouri.

   2.   At the time of the conduct complained of herein and at all times mentioned, Defendant

American Pub, LLC was a limited liability company registered to do business in the State of

Missouri and did conduct business in Creve Coeur Missouri, which is in St. Louis County,

Missouri.  Defendant's registered agent for service of process is set forth in the caption of this

Petition.

   3.   As Defendant transacts business in, and all pertinent conduct described herein occurred

in, St. Louis County, Missouri, pursuant to Mo. Rev. Stat. 508.010, venue and jurisdiction is

proper in this Court of general jurisdiction.

6503671.1

**EXHIBIT A**

## General Allegations

### *Discriminatory Pay*

4.   Defendant owns and operates, *inter alia*, a TGI Friday's restaurant located at 12398 Olive Blvd., Creve Coeur, MO 63141.

5.   Kirk is an African American female who began working for Defendant at TGI Friday's in Creve Coeur in or around July of 2016 as a Grille Cook.  At that time, Kirk had a significant amount of kitchen experience, over 21 years in various kitchens.

6.   In or around September 2016, Kirk learned that male Grille Cooks were hired in at a pay rate significantly higher than hers.  These male cooks were making more money per hour than Kirk and were performing the same work in the same establishment.  Moreover, these male cooks had less experience than Kirk.

7.   There was no legitimate reason to pay these males cooks more than Kirk.

8.   The pay disparity was based on sex.

9.   Kirk reported this pay disparity to her supervisors and was ultimately given a raise at which point she believed that she was being compensated at the same rate as the male cooks working the same job as her.

10. In or around February 2018, Kirk learned that she was still being paid less than her male counterparts that had less experience than her.  Such male cooks performed the same – if not less work than Kirk – at the same establishment.

11. Kirk again reported this pay discrepancy, this time to General Manager Steve.  In response, Steve had a meeting with two of the male cooks, telling them to not discuss their pay with Kirk.

12. Upon information and belief, the pay disparity continued.

***Sexual Harassment***

13. In or around the first week of January 2018, Kirk's co-worker, Martine, asked her to come help with something in the dry storage area of the kitchen.  When Kirk got to the back of the kitchen, Martine was standing there; he lifted up his apron and showed Kirk his penis.  He then grabbed Kirk's arm, pulling Kirk towards him and asked her to perform sexual acts.

14. Kirk yelled "NO!" and told Martine to leave her alone.

15. Kirk left the dry storage area extremely upset and scared.  Kirk was reluctant to report this to management for fear of losing her job and being isolated at work, but ultimately Kirk reported this to two managers – Rosa and Roberto – sometime in or around late January or early February 2018.

16. Upon information and belief, Roberto and/or Rosa informed Martine of Kirk's report.  This caused Martine to treat Kirk with extreme hostility; he would push Kirk out of the way, yell at her, and treat her rudely.

17. Moreover, other co-workers and managers began to treat Kirk with hostility after her report.  Her fear had come true.

18. Nonetheless, and despite having already reported the incident to management months before, Kirk again informed management of Martine's sexual harassment.  In or around the second week of March 2018, Kirk informed General Manager Steve.

19. Steve told Kirk that she needed to report this to HR and that she must use her home computer to do so.  Kirk told Steve that she did not have a computer and was not good with computers and asked her GM to please report this to HR for her.  Steve insisted he was unable to do that.

20. On or around March 15, 2018, Kirk reported to work and Martine was back from a trip to Mexico working in the kitchen with Kirk.  Martine had not been reprimanded and upon information and belief no investigation was conducted.

21. Kirk was forced to work side by side with Martine who continued his hostile treatment.

22. Kirk was in tears her entire shift; her heart was racing.

23. Kirk was forced to work with Martine – who suffered no consequences – routinely thereafter.

### *Retaliation*

24. On or around March 26, 2018, Kirk filed a Charge of Discrimination with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission pertaining to Paragraphs 1-23 above.

25. Just a few days after Defendant received notice of Kirk's Charge, Kirk was written up for being late despite coming in at the same time that day as she – and others – had for years.

26. The next day Kirk was written up for having slow ticket times.  Again, in the two years prior to her Charge working for Defendant, Kirk had never before been written up for this.

27. Shortly after Defendant received notice of Kirk's Charge, her works hours were cut significantly.

28. Prior to filing her Charge, Kirk was working approximately 36-40 hours per week.  She would regularly work Monday morning, Wednesday morning, Friday morning, Saturday night, and Sunday morning.

29. After filing her Charge, Kirk's hours were cut to around 23-24 hours per week.  Her schedule was also materially changed.

30. After the Charge, Kirk was always the first person to be sent home from work, which was a new development and something Kirk did not request.

31. Previously, Kirk was never sent home early and was relied on heavily by the restaurant staff and management.

32. Because her hours were significantly reduced, Kirk was forced to secure other part-time employment in or around mid to late May 2018.

33. Kirk made certain to schedule her other part time job around her job with Defendant. Kirk informed her manager that because she was now always off on Tuesdays and Thursdays, that she would be scheduled to work at her other job on those days.  Kirk requested that she continue to be scheduled off on these days – which is what her schedule had been for years.

34. In or around early to mid-May 2018, Kirk requested to be off May 21-26 because she was scheduled to have eye surgery.  This request was granted.

35. On May 21 – a Monday – Kirk was expecting to receive her schedule for the week. Indeed, ever since Kirk had work for Defendant, a schedule for the week was sent to her phone on Monday.  On May 21, however, it was not.

36. Kirk went into the doctor on May 21, and the doctor rescheduled her surgery for June.

37. As a result, Kirk was available to work more than week.  She called Defendant and said that if there were any shifts available for May 21-26 to please let her know because she needed the hours.  Defendant said there were none.

38. Later that week, still having not received a work schedule, Kirk called Defendant again to see if there were any weekend hours she could pick up.

39. At that time, her manager informed her for the first time that she was on the schedule for that Sunday morning, May 27.

40. Kirk went to work that Sunday and again informed her manager that she did not receive a schedule for the week. She asked why and further stated that had she not called in the night before she would likely have been written up as a "no call no show" despite having no knowledge that she was on the schedule.

41. The next Monday, May 28, Kirk once again was not sent a schedule. Again, this was contrary to the practice that had been in place for the several years she had worked for Defendant. Nonetheless, Kirk went to work Monday morning per usual.

42. She was off Tuesday, per usual.

43. Kirk went to work on Wednesday, May 30, for her usual morning shift.

44. While at work that Wednesday, Kirk was told, for the first time, that she would be required to work the next day – a Thursday. Management knew that Kirk never worked on Thursdays and further knew that Kirk had taken another job with shifts on Thursdays.

45. Kirk reiterated this to management, explaining that she could not work the following day. She further explained that she was never given a schedule and had no prior notice of her being scheduled to work for Defendant on Thursday. After Kirk pleaded, Management capitulated and was understanding.

46. The next day, Thursday, May 31, Kirk texted and called her manager in the early morning to again confirm that she could not work that day. He did not respond, and Kirk worked her other job.

47. That night, Kirk called and asked management what time she should be at TGIF on Friday, June 1, since she did not have a schedule sent to her. Kirk was told to come in at 11:00 a.m.

48. Kirk did as she was told. Upon arriving, Kirk was asked "why didn't you show up yesterday?" This question was strange because management knew exactly why Kirk was unable to work. Indeed, Defendant deliberately and knowingly scheduled Kirk to work on a day she was never before been scheduled and deliberately and knowingly withheld the schedule from Kirk. This was to trump up a pretextual and retaliatory reason for discipline.

49. After asking Kirk why she did not show up, Defendant presented her with a write up that she refused to sign for the reasons above. Defendant said "you won't sign it, you're terminated."

50. Kirk asked for a copy of the reason she was being terminated and Defendant stated "I am not giving you a copy, get off my premises before I call the police."

51. The aforementioned discipline, reduction of hours, hostile treatment, manipulation of scheduling, and pretextual termination was retaliation for Kirk's filing of a Charge of Discrimination.

### *Administrative Exhaustion*

52. On March 26, 2018, Kirk filed a timely Charge of Discrimination relating to the sex discrimination, harassment, and retaliation set forth in paragraphs 1-23 above. The Missouri Commission on Human Rights ("MCHR") Charge No. was E-03/18-49299.

53. On or around April 8, 2019, Kirk received a Notice of Right to Sue from the Missouri Commission on Human Rights for Charge No. E-03/18-49299. She has timely filed this lawsuit within 90 days of receiving such Notice.

54. On June 8, 2018, Kirk filed a timely Charge of Discrimination relating to the retaliation set forth in paragraphs 24-51 above. The MCHR Charge No. was E-06/18-49574.

55. On or around April 8, 2018, Kirk received a Notice of Right to Sue from the Missouri Commission on Human Rights for MCHR Charge No. was E-06/18-49574. She has timely filed this lawsuit within 90 days of receiving such Notice.

<u>**First Cause of Action**</u>:
**Sex-Based Pay Discrimination in Violation of**
**Equal Pay Act, 29 U.S.C. § 206(d)(1)**

56. Kirk realleges and incorporates by reference all allegations in all preceding paragraphs.

57. Section 206(d)(1) of the Equal Pay Act makes it unlawful for an employer "to discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, efforts, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system, (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."

58. Defendant employed Kirk and her male coworkers as Grille Cooks – a job requiring substantially equal skill, effort, and responsibility.

59. Kirk and her male co-workers performed their jobs under similar working conditions.

60. Kirk was paid a lower wage than her male co-workers doing substantially equal work at the same establishment.

61. The differential in pay between Kirk and her male co-workers was not due to a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, nor was the difference in pay a result of a factor other than sex.

62. Defendant caused, contributed to, or caused the continuation of wage rate discrimination based on sex, in violation of the Equal Pay Act.

63. Defendant's actions were willful and intentional; Defendant did not act in good faith and had no reasonable grounds for the pay disparity described herein.

64. As a direct, legal and proximate result of the discrimination, Kirk has sustained, and will continue to sustain, economic damages to be proven at trial.

65. As a result of Defendant's actions, Kirk has suffered garden variety emotional distress, resulting in damages in an amount to be proven at trial.

**WHEREFORE,** Kirk prays for the following relief, including a monetary award exceeding $25,000.00 and a jury trial:

A. Economic and compensatory damages, including, but not limited to, all monetary relief available for equal pay violations such as back pay;

B. Liquidated damages;

C. Prejudgment and post judgment interest;

D. Reasonable attorneys' fees and costs; and

E. All other relief this Court deems just and appropriate.

### Second Cause of Action
### Missouri Human Rights Act ("MHRA") – Sex Discrimination

66. Kirk realleges and incorporated by reference all allegations in all preceding paragraphs.

67. Kirk suffered sex discrimination in that she was paid less than her male co-workers for the same work in the same establishment under similar working conditions.

68. The motivating factor of this discrimination and pay disparity was Kirk's sex.

69. Defendant, by the actions described herein, discriminated against Kirk due to her sex in violation of the MHRA.

70. As a consequence of Defendant's actions as described herein, Kirk lost wages and other financial incidents and benefits of employment.

71. As a consequence of Defendant's actions as described herein, Kirk has experienced garden variety emotional distress, embarrassment, and a loss of reputation.

72. As a consequence of Defendant's actions as described herein, Kirk has incurred, and will continue to incur, attorney's fees, costs, and expenses.

73. The conduct of Defendant was outrageous and willfully undertaken with reckless disregard for Kirk's rights.

**WHEREFORE,** Kirk prays for the following relief, including a monetary award exceeding $25,000.00 and a jury trial:

    A.  A declaration that Defendant has engaged in unlawful employment practices with respect to Kirk in violation of her rights protected by the MHRA;

    B.  Back pay and front pay and any other lost financial benefits;

    C.  Punitive damages;

    D.  Hedonic damages, emotional distress damages;

    E.  An amount to compensate Kirk for any tax treatment of a damages award;

    F.  Prejudgment and post judgment interest;

    G.  Reasonable attorneys' fees and costs; and

    H.  All other relief this Court deems just and appropriate.

### Third Cause of Action
### MHRA – Sex Discrimination, Hostile Work Environment

74. Kirk realleges and incorporated by reference all allegations in all preceding paragraphs.

75. Kirk was subjected to unwelcome sexual harassment by Defendant's employee – Martine – who, *inter alia*, exposed his genitals to Kirk, pulled her towards him, and insisted she perform sexual acts.

76. Kirks gender motivated this harassment.

77. As a result of this sexual harassment, Kirk's work environment was intimidating, hostile, and offensive.

78. The sexual harassment interfered with Kirk's work performance.

79. Defendant knew of the sexual harassment and failed to take appropriate action.  Kirk was required to work side by side with Martine thereafter, and Martine did not suffer adequate – if any – repercussions.

80. Defendant, by the actions described herein, discriminated against Kirk due to her sex in violation of the MHRA.

81. As a consequence of Defendant's actions as described herein, Kirk lost wages and other financial incidents and benefits of employment.

82. As a consequence of Defendant's actions as described herein, Kirk has experienced emotional distress, embarrassment, and a loss of reputation.

83. As a consequence of Defendant's actions as described herein, Kirk has incurred, and will continue to incur, attorney's fees, costs, and expenses.

84. The conduct of Defendant was outrageous and willfully undertaken with reckless disregard for Kirk's rights.

**WHEREFORE,** Kirk prays for the following relief, including a monetary award exceeding $25,000.00 and a jury trial:

    A.  A declaration that Defendant has engaged in unlawful employment practices with respect to Kirk in violation of her rights protected by the MHRA;

    B.  Back pay and front pay and any other lost financial benefits;

    C.  Punitive damages;

    D.  Hedonic damages, emotional distress damages;

E.  An amount to compensate Kirk for any tax treatment of a damages award;

F.  Prejudgment and post judgment interest;

G.  Reasonable attorneys' fees and costs; and

H.  All other relief this Court deems just and appropriate.

## Fourth Cause of Action
### MHRA – Retaliation

85. Kirk realleges and incorporated by reference all allegations in all preceding paragraphs.

86. Kirk engaged in activities protected under the MHRA.

87. Kirk's protective activities were a motivating factor in, *inter alia*, the reduction of her work hours, change of schedule to her detriment, and termination.

88. The purported reasons for the reduction of Kirk's hours, change of schedule, and Kirk's termination were pretext for unlawful retaliation.

89.  Defendant, by the actions described herein, retaliated against Kirk due to her protected activity in violation of the MHRA.

90. As a consequence of Defendant's actions as described herein, Kirk lost wages and other financial incidents and benefits of employment.

91. As a consequence of Defendant's actions as described herein, Kirk has experienced emotional distress, embarrassment, and a loss of reputation.

92. As a consequence of Defendant's actions as described herein, Kirk has incurred, and will continue to incur, attorney's fees, costs, and expenses.

93. The conduct of Defendant was outrageous and willfully undertaken with reckless disregard for Kirk's rights.

**WHEREFORE,** Kirk prays for the following relief, including a monetary award exceeding $25,000.00 and a jury trial:

A. A declaration that Defendant has engaged in unlawful employment practices with respect to Kirk in violation of her rights protected by the MHRA;

B. Back pay and front pay and any other lost financial benefits;

C. Punitive damages;

D. Hedonic damages, emotional distress damages;

E. An amount to compensate Kirk for any tax treatment of a damages award;

F. Prejudgment and post judgment interest;

G. Reasonable attorneys' fees and costs; and

H. All other relief this Court deems just and appropriate.

Respectfully submitted,

HKM Employment Attorneys LLP


By  /s/ S. Cody Reinberg
    S. Cody Reinberg #66174
    9666 Olive Blvd., Suite 202A
    St. Louis, Missouri 63132
    314-391-9557
    creinberg@hkm.com


Attorneys for Plaintiff Delores Kirk


**Dated:  June 14, 2019**